IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES BENTLEJEWSKI**, | ) |
| Plaintiff, | ) |
| v. | ) 2:13cv1385 |
| | ) **Electronic Filing** |
| **WERNER ENTERPRISES, INC.** and | ) |
| **DRIVERS MANAGEMENT, LLC**, | ) |
| a wholly owned subsidiary of WERNER | ) |
| ENTERPRISES, INC., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

July 8, 2015

### I. INTRODUCTION

Plaintiff, James Bentlejewski ("Plaintiff" or "Bentlejewski'), filed a three (3) count Complaint alleging (1) Intentional Interference with Existing Contractual Relationship; (2) Trade Libel; and (3) Defamation *Per Se*, against Defendants, Werner Enterprises, Inc. ("Werner") and Drivers Management, LLC ("DM") (collectively "Defendants" or "Werner"). Werner has filed a motion for summary judgment, Bentlejewski has responded and the matter is now before the Court.

### II. STATEMENT OF THE CASE

Bentlejewski was employed as truck driver by Werner from May 9, 2011, until he voluntarily left his employment on May 14, 2012. Defendants' Concise Statement of Material Facts ("Def. CSMF") ¶ 1. On May 16, 2012, Schneider National, Inc. ("Schneider") extended Bentlejewski a conditional offer of employment as a driver associate. Plaintiff's Response to Concise Statement of Material Facts ("Pl. RCSMF") ¶ 9, Ex. I. On May 20, 2012, Bentlejewski began training for his position at Schneider. Def. CSMF ¶ 3. On or about May 22, 2012, at

Schneider's request, Werner provided an Employment Verification which identified four (4) minor accidents involving Bentlejewski which occurred during his employment with Werner. Def. CSMF ¶ 5. By email dated May 25, 2012, Schneider informed Bentlejewski that he would not be considered for a driving position "based in whole or in part on information contained in a consumer report furnished by HireRight." Def. CSMF ¶ 7.

On or about March 11, 2013, Bentlejewski began probationary employment with Vitran Express, Inc. ("Vitran"). Def. CSMF ¶ 13. Pursuant to Federal Motor Carrier Safety Administration ("FMCSA") regulations, Vitran requested Bentlejewski's accident and driving history report for the previous three (3) years from his former employers. Def. CSMF ¶ 14. On June 10, 2013, Werner provided an Employment Verification which identified four (4) minor accidents involving Bentlejewski which occurred during his employment. Def. CSMF ¶ 15. On June 12, 2013, Vitran sent Bentlejewski a notice of probationary employment separation indicating that his employment would not be continued. Def. CSMF ¶ 17.

Bentlejewski then filed this lawsuit in September 2013, alleging that the Employment Verifications sent to Schneider and Vitran contained false and misleading information. Def. CSMF ¶ 19.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim.

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)).

## IV. DISCUSSION

### A. Defamation

"Defamation, of which libel[1], slander, and invasion of privacy are methods, is the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 476 (E.D. Pa. 2010) (quoting *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. 2008)). A plaintiff invoking Pennsylvania law in an action for defamation has the burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *See* 42 PA. CON. STAT. ANN. § 8343(a); *see also Mzamane v. Winfrey*, 693 F. Supp. 2d at 476-477.

A statement is considered libel or defamation *per se* when the "speaker imputes to another conduct, characteristics, or a condition that would adversely affect[him in his] lawful business or trade . . . ." *Walker v. Grand Cent. Sanitation, Inc.*, 634 A.2d 237, 241 (Pa. Super. 1993). A statement is defamation *per se* as an accusation of business misconduct if it "ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of lawful business." *Smith v. IMG Worldwide, Inc.*, 437 F. Supp. 2d 297, 308 (E.D. Pa. 2006) (quoting *Clemente v. Espinosa*, 749 F. Supp. 672, 677-678 (E.D. Pa. 1990)). The

---

[1] A written defamation is considered libel. *See Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. 2008) ("A 'libel' is any malicious publication that is written, printed, or painted, or procured to be written, printed, or painted, and which tends to expose a person to contempt, ridicule, hatred, or degradation of character.").

statement must be "peculiarly harmful to one engaged in [that] business or profession. Disparagement of a general character, equally discreditable to all persons, is not enough . . . ." *Clemente v. Espinosa*, 749 F. Supp. at 678. The statements that Bentlejewski alleges constitute defamation fall into this category[2].

Even if a plaintiff could establish the elements of defamation, Pennsylvania law shields the publisher of defamatory statements from liability if the statement "was made subject to a privilege, and the privilege was not abused." *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1268 (Pa. Super. 2005). A conditional privilege applies "if the publisher reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know the information conveyed." *Am. Future Sys., Inc. v. Better Bus. Bureau*, 923 A.2d 389, 393 (Pa. 2007). The defendant has the burden of proving the privileged character of the defamatory statement. 42 PA. CON. STAT. ANN. § 8343(b).

If a defendant carries its burden to show that a communication is conditionally privileged, the burden shifts to the plaintiff to establish that the defendant abused its conditional privilege. *Miketic v. Baron*, 675 A.2d 324, 329 (Pa. Super. 1996). An abuse of privilege occurs if "the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or included defamatory matter not reasonably

---

[2] A plaintiff in a defamation *per se* action need not make a showing of special damages, *i.e.*, out-of-pocket expenses borne by the plaintiff due to the defamation, he or she must demonstrate general damages caused by the statement *i.e.*, proof that one's reputation was actually affected by defamation or that one suffered personal humiliation, or both. *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 581 (E.D. Pa. 1999); *Brinich v. Jencka*, 757 A.2d 388, 397 (Pa. Super. 2000); *see also Pennoyer v. Marriott Hotel Services, Inc.*, 324 F. Supp. 2d 614, 619 (E.D. Pa. 2004) ("The Restatement (Second) of Torts requires a victim of slander per se to make some showing of general damages . . . .")

5

believed to be necessary for the accomplishment of the purpose." *Moore v. Cobb-Nettleton*, 889 A.2d at 1269.

The Court, in this instance, finds no need to perform a detailed analysis of the required elements of defamation and/or defamation *per se*, as it finds that the Employment Verifications provided by Werner to potential employers, identifying four (4) minor accidents involving Bentlejewski during his employment, are conditionally privileged. Further, the Court finds no evidence in the record that Werner abused the privilege.

Under Pennsylvania law, a conditional privilege applies when a prior employer provides an evaluation of a former employee at the request of a prospective employer. *Grogan v. Duane, Morris & Heckscher*, 1991 U.S. Dist. LEXIS 7550, 20-21 (E.D. Pa. June 4, 1991) (citing *Zuschek v. Whitmoyer Laboratories, Inc.*, 430 F. Supp. 1163, 1165 (E.D. Pa. 1977), aff'd, 571 F.2d 573 (3d Cir. 1978); *Rost v. National Railroad Passenger Corp.*, 1990 U.S. Dist. LEXIS 4691 (E.D. Pa. April 20, 1990); *Frymire v. Painewebber, Inc.*, 107 Bankr. 506 (E.D. Pa. 1989)). Moreover, under the FMCSA regulations, every motor carrier was required "to make . . . investigations and inquiries with respect to each driver it employs," including but not limited to "[a]n investigation of the **driver's safety performance history** with Department of Transportation regulated employers during the preceding three years." *See* 49 C.F.R. § 391.23(a)(2) (2012) (emphasis added). Werner, an "employer" as defined by § 390.5 of the regulations, was required to respond to each such request and did so by supplying an Employment Verification Report to the employers looking to hire Bentlejewski. *See* 49 C.F.R. § 391.23(g).

Bentlejewski, however, argues that the information included in the Employment Verification Reports provided by Werner was not required by federal law. Section 391.23(d) requires that the prospective motor carrier "investigate, at a minimum, the information listed in

6

this paragraph from all previous employers of the applicant that employed the driver to operate a CMV within the previous three years" including "[a]ny accidents as defined by § 390.5 of this chapter;" and "[a]ny accidents the previous employer **may** wish to provide that are retained pursuant to § 390.15(b)(2), or pursuant to the employer's internal policies for retaining more detailed minor accident information." 49 C.F.R. § 391.23(d)(2)(i) and (ii).

Under the FMCSA regulations, "[a]ccident" means:

(1) . . . an occurrence involving a commercial motor vehicle operating on a highway in interstate or intrastate commerce which results in:
    (i) A fatality;
    (ii) Bodily injury to a person who, as a result of the injury immediately receives medical treatment away from the scene of the accident; or
    (iii) One or more motor vehicles incurring disabling damage as a result of the accident, requiring the motor vehicle(s) to be transported away from the scene by a tow truck or other motor vehicle.

(2) The term accident does not include:
    (i) An occurrence involving only boarding and alighting from a stationary motor vehicle; or
    (ii) An occurrence involving only the loading and unloading of cargo.

49 C.F.R. § 390.5. Bentlejewski, therefore, argues that under the regulations, he had no "accidents" while employed by Werner.

The Court can envision, however, numerous occurrences involving a commercial motor vehicle that would affect a driver's "safety performance history" that fall outside of both subsections (1) and (2) of § 390.5's definition of "accident," including the preventable accidents dated May 11, 2011, September 11, 2011, and March 9, 2012, listed by Werner in the Employment Verification Reports provided to Schneider and Vitran. Whether such information was required under federal law does not affect its status as conditionally privileged. Clearly, Werner and both Schneider and Vitran shared a common interest in Bentlejewski's safety performance history and, as prospective employers, Schneider and Vitran were entitled to the information conveyed.

7

Bentlejewski also ignores the public's interest in the safety of commercial trucking. Pennsylvania has affirmatively held that matters of public concern give rise to a conditional privilege. *See, Moore v. Cobb-Nettleton*, 889 A.2d at 1268. "A conditional privilege arises when a recognized interest of the public is involved." *Thompson v. Wagner*, 631 F. Supp. 2d 664, 686 (W.D. Pa. 2008) (quoting *Am. Future Sys. v. Better Business Bureau of E. Pa.*, 872 A.2d 1202, 1210 (Pa. Super. 2005). The Court finds that the communications at issue between Werner and Bentlejewski's prospective employers were conditionally privileged.

Bentlejewski now must establish that Werner abused its conditional privilege. *See Miketic v. Baron*, 675 A.2d at 329. An abuse of privilege occurs if "the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or included defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose." *Moore v. Cobb-Nettleton*, 889 A.2d at 1269.

Bentlejewski argues that his burden is "relatively light" in that he need only show that Werner was negligent is publishing the defamatory material in order to show the privilege was abused. Werner asserts, however, that the matter at issue is a public concern, therefore Bentlejewski must prove malice to overcome the conditional privilege. *See Moore v. Cobb-Nettleton*, 889 A.2d at1269 ("cases which have held that a conditional privilege can be lost by negligence are restricted to matters which are 'not of a public concern'").

In *Moore v. Vislosky*, 240 Fed. Appx. 457 (3d Cir. 2007), the Court of Appeals for the Third Circuit predicted that the Pennsylvania Supreme Court would require a private-figure plaintiff suing on matters of public concern to show that the defamatory statements were made with actual malice to defeat a conditional privilege under Pennsylvania law. *Id.* at 464. In reaching its conclusion the Court reasoned:

In a 1963 opinion, the Pennsylvania Supreme Court indicated that negligence on the part of the defendant in making defamatory statements is sufficient to show that a conditional privilege has been abused and, thus, has been lost. *Purcell v. Westinghouse Broadcasting Co.*, 411 Pa. 167, 191 A.2d 662, 668 (Pa. 1963). The *Purcell* Court stated, "[t]he failure to employ such 'reasonable care and diligence' can destroy a privilege which otherwise would protect the utterer of the communication." *Id.* Accordingly, Pennsylvania cases following *Purcell* regularly stated that abuse of a conditional privilege occurs when:

> the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.

*Miketic v. Baron*, 450 Pa. Super. 91, 675 A.2d 324, 329 (Pa. Super. Ct. 1996) (quoting *Beckman v. Dunn*, 276 Pa. Super. 527, 419 A.2d 583, 588 (Pa. Super. Ct. 1980)) . . .

However, more than a decade after *Purcell* was handed down, the United States Supreme Court announced its decision in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), holding that a private-figure plaintiff must show some fault (*i.e.*, at least negligence) to recover against a defendant where the speech at issue relates to matters of public concern. In light of the Supreme Court's pronouncement in *Gertz*, the Pennsylvania Superior Court has recognized that where the allegedly defamatory speech relates to matters of public concern, a private-figure plaintiff is required to show more than mere negligence to defeat a conditional privilege. *Am. Future Sys. Inc. v. Better Bus. Bureau of E. Pa.*, 872 A.2d 1202, 1211 (Pa. Super. Ct. 2005) (citing *Banas v. Matthews Int'l Corp.*, 348 Pa. Super. 464, 502 A.2d 637 (Pa. Super. Ct. 1985); *Rutt v. Bethlehems' Globe Publ'g Co.*, 335 Pa. Super. 163, 484 A.2d 72 (Pa. Super. Ct. 1984)); *see also Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1269-70 (Pa. Super. Ct. 2005) . . .

This view finds support in section 600 of Restatement (Second) of Torts, which states, in relevant part, "one who upon an occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he (a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity." RESTATEMENT (SECOND) OF TORTS § 600 (1977). As the Comment to this section explains,

> One consequence of the holding [of *Gertz v. Robert Welch, Inc.*] is that mere negligence as to falsity, being required for all actions of defamation, is no longer treated as sufficient to amount to abuse of a conditional privilege. Instead, knowledge or reckless disregard as to falsity is necessary for this purpose.

9

> *Id.* cmt. b.

*Id.* at 463-464. Accordingly, this Court agrees that Bentlejewski is required to prove that Werner intentionally included false information on his Employment Verifications to defeat the conditional privilege.

Bentlejewski, however, fails to direct this Court to any cognizable evidence that would create a material issue of fact regarding Werner's alleged abuse of its conditional privilege. Instead, Bentlejewski implores this Court to "examine the facts of the three incidents [in the Employment Verification Report] . . . with the understanding that where **there is a conflict in the record, Plaintiff's rendition is to be believed**." Brief in Opposition p. 9 (emphasis added). Obviously, Bentlejewski misunderstands the applicable legal standard for summary judgment. As the nonmoving party, Bentlejewski cannot rely, as he so attempts here, upon "unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion." *Celotex Corp. v. Catrett*, 477 U.S. at 325. To the contrary, the nonmoving party must direct the Court to sufficiently cognizable evidence "to create material issues of fact concerning every element as to which [he] will bear the burden of proof at trial." *Fuentes v. Perskie*, 32 F.3d at 762 n.1. At this stage of the litigation, Plaintiff needs more than conclusory allegations to defeat summary judgment.

After a comprehensive review of the record, this Court is unable to find a material issue of fact regarding whether Werner acted with actual malice in its communications to Schneider and Vitran regarding Bentlejewski's safety performance history during his employment with Werner. Accordingly, summary judgment on his claims of libel and defamation *per se* will be granted.

B.  <u>Intentional Interference with Existing Contractual Relationship</u>

Pennsylvania recognizes both interference with existing contractual relations and interference with prospective contractual relations as branches of the tort of interference with contract. *See U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 925 (3d Cir. 1990). Though distinct, the two branches of tortious interference share essentially the same elements. *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 529 (3d Cir. 1998). A claim for intentional interference with contractual or prospective contractual relations requires proof of:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009); *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. 1988); *also see Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979).

Similar to the defamation analysis under Pennsylvania law, however, a communication is not intentional interference of an existing contractual claim if there is a "privilege or justification on the part of the defendant" who shared the information. *Foster v. UPMC S. Side Hosp.*, 2 A.3d 655, 665-66 (Pa. Super. 2010); RESTATEMENT (SECOND) OF TORTS § 766 (1979). The plaintiff must prove that "the defendant's actions were improper under the circumstances presented." *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 98 (Pa. Super. 2009). "One who intentionally causes a third person not to perform a contract . . . does not interfere improperly with the other's contractual relation . . . by giving the third person (a) truthful

information . . . or (b) honest advice within the scope of a request for the advice." RESTATEMENT (SECOND) OF TORTS § 772 cmt. b.; *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d at 99.

The Court is unable to find any evidence in the record that suggests Werner improperly provided the Employment Verifications requested by Schneider and Vitran. Moreover, Werner was required to respond to such inquiries under the FMCSA regulations. As with the defamation claim, even assuming the communications were untrue, there is no evidence that would allow a reasonable jury to find that Werner acted in a way that was improper. Summary judgment on Bentlejewski's intentional interference with contract claim will be granted.

### IV. CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment shall be granted. An appropriate Order follows.

s/ DAVID STEWART CERCONE
David Stewart Cercone
United States District Judge

cc: John David Newborg, Esquire
Timothy R. Smith, Esquire
Christopher T. Sasada, Esquire
Frank M. Gianola, Esquire

(*Via CM/ECF Electronic Mail*)